## Williams, et al., v. Commonwealth.

(Decided March 5, 1913.)

### Appeal from Graves Circuit Court.

1. Indictment—Appropriating Property in Custody of Common Carrier—Sufficiency of Indictment.—The indictment charging appellants with the crime of appropriating property in the custody of a common carrier, based upon Section 1201b, Ky. Stats., substantially follows the language of the statute and is not open to the objection that it charges two offenses. The allegations of a conspiracy have no rightful place in the indictment, for the conspiracy was not necessary to the commission of the offense, and all that is charged as to the conspiracy is mere surplusage.

2. Indictment—Appropriating Property in Custody of Common Carrier—Name of Consignee or Owner—Sufficiency of Indictment.— The statute does not require that the name of the consignee or owner of the property thus feloniously taken from the possession of the carrier and appropriated shall be stated in the indictment. It is sufficient that it was feloniously taken from the carrier in the manner charged and appropriated by the taker.

3. Criminal Law—Evidence of Confinement in House of Reform.— Upon the trial of three persons jointly charged with appropriating the property of a common carrier, it was not error to pemit the Commonwealth to prove by one of them, on cross examination, that he had been convicted of an offense that compelled him to be confined in the House of Reform.

4. Instructions.—One who is tried for a criminal offense cannot com-
plain of an instruction that made a conviction more difficult than
the law required.

5. Criminal Law—Appropriating Property in Custody of Common
Carrier—Indictment For—Sufficiency of Evidence.—Upon the
trial of three persons charged with appropriating property in the
custody of a common carrier, it cannot be said that the verdict of
conviction is flagrantly against the evidence.

WEBB & WEAKS for appellants.

JAMES GARNETT, Attorney General, M. M. LOGAN, Assistant
Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The three appellants herein, Willis Williams, Lo-
renzo Bradford, and Burley Love, were jointly tried and
by the verdict of the jury found guilty, under the fol-
lowing indictment, returned in the Graves Circuit Court:

"The Commonwealth of Kentucky against Willis
Williams, Lorenzo Bradford, and Burley Love. Indict-
ment Graves Circuit Court.

"The grand jurors of the County of Graves, in the
name and by the authority of the Commonwealth of Ken-
tucky, accuse Willis Williams, Lorenzo Bradford, and
Burley Love of the crime of appropriating property in
custody of a common carrier, committed in manner and
form as follows, to-wit: The said Willis Williams, Lo-
renzo Bradford, and Burley Love, in the said County of
Graves, on the 22nd day of June, 1912, and before the
finding of this indictment, did unlawfully and feloniously
conspire and band themselves together for the felonious
purpose of appropriating to their own use property in
possession of a common carrier, for transportation and
delivery, and in pursuance of said conspiracy, did unlaw-
fully and feloniously appropriate to their own use one
case of whiskey, which was at the time in the possession
of the Illinois Central Railroad Company, a corporation
engaged in operating a line of railway through Graves
County, Kentucky, and being a common carrier; and said
railroad company having possession of said case of
whiskey, for the purpose of transportation and delivery
from Louisville to Little Rock, Arkansas, against the
peace and dignity of the Commonwealth of Kentucky."

Following the return of the verdict, judgment was en-
tered thereon, whereby the court fixed the punishment of
each of the appellants at confinement in the penitentiary

not less than one nor more than five years, and from that judgment and the refusal of the trial court to grant a new trial each of them has appealed.

The indictment seems to have been based upon section 1201b, Kentucky Statutes, which provides:

"That any person who shall open any box, barrel or other package containing personal property of any kind while in the possession of a common carrier for transportation or delivery, for the purpose of appropriating the contents thereof to his own use, or to the use of another, or who shall appropriate to his own use, or to the use of another, any property in the passession of a common carrier for transportation or delivery, shall be guilty of a felony, and shall be punished by confinement in the penitentiary for not less than one nor more than five years."

It will be observed that in addition to substantially following the language of the statute, supra, in charging the crime for which appellants were convicted, the indictment alleges that they did unlawfully and feloniously conspire and band themselves together for the felonious purpose of committing the crime, and did, in pursuance thereof, commit same.

It is insisted for appellants that the trial court erred in overruling the demurrer filed by them to the indictment. This contention apparently rests upon two grounds: (1) that the indictment charges two offenses; (2) that it does not charge the value of the property feloniously appropriated by the appellants or give the name of the owner thereof. Neither of these objections is tenable. The indictment charges but one offense, namely, that denounced by section 1201b, Kentucky Statutes, in doing which it substantially follows the language of the statute. The allegations of a conspiracy on the part of appellants to commit the offense, and as to its having been committed by them in pursuance of such conspiracy, have no rightful place in the indictment, for the conspiracy was not necessary to the commission of the offense and it was otherwise sufficiently alleged in the indictment. All that is charged as to the conspiracy is mere surplusage. In other words, the offense charged is that the appellants did unlawfully and feloniously appropriate to their own use one case of whiskey which, at the time of such appropriation, was in the possession of the Illinois Central Railroad Company, a common carrier, for transportation and delivery to the consignee at

Little Rock, Arkansas. And the statute does not require that the name of the consignee or owner of the property thus feloniously taken from the possession of the carrier and appropriated shall be stated in the indictment. It is sufficient that it was feloniously taken from the common carrier in the manner charged, and appropriated by the taker.

Appellant's counsel also complains that the court erred in refusing a peremptory instruction, directing a verdict of acquittal, as asked by them at the conclusion of the Commonwealth's evidence. In determining whether this contention should be sustained consideration of the evidence will be necessary. It appears from that of the Commonwealth that a freight train operated by the Illinois Central Railroad Company was wrecked at Wingo, in Graves County, Kentucky; two cars of which were so broken as to expose their contents; one of these being car CH&D 110104, loaded with merchandise, among which were thirteen cases of whiskey, consigned to Frank Hoffman, Little Rock, Arkansas, and which had been shipped from Louisville, Kentucky. Quite a crowd collected at the scene of the wreck, appellants being among the number.

E. W. Lewis, the locomotive engineer in the employ of the railroad company, who assisted in clearing away the wreck testified that while so engaged he saw three negro men carrying away from the car a square box, and that when last seen by him they were rolling the box into the bushes. He reported the occurrence to Pelley, the superintendent, who was present, and, at Pelley's instance, Robertson, a detective, went out into the bushes where the negroes had been seen rolling the box, and there found the three appellants, whom he arrested. Appellants were not identified by Lewis as the persons he saw rolling the box as his acquaintance with them did not seem sufficient to enable him to do so.

Robertson, the detective, who was sent by Superintendent Pelley to recover the box and arrest the persons who had taken it, testified that when he went to the point in the bushes where Pelley told him to go he found the three appellants and a small boy; that they were around a box, recently covered with corn stalks, and that the box contained whiskey consigned to Frank Hoffman, Little Rock, Arkansas, shipped from Louisville, Kentucky; that the box had mud on it, was somewhat wet and appeared to have been on the ground. It was found at a

distance of from 100 feet to 150 feet from the place of the wreck. The arrest of appellants by Robertson immediately followed.

· J. B. Graham, a spectator of the wreck, testified that he saw the appellants where the box of whiskey was found by Robertson; that he went with Robertson to where it was found; that they discovered the box under some bushes under the bank and appellants were standing around it. After the arrest of appellants Robertson had them go back and get the box; that only the appellants were around the box at the time of the arrest, but another negro was standing off some distance.

Davis, another witness introduced by the Commonwealth, saw the discovery of the box and the arrest of the appellants. He also testified that they were standing around the box at the time of the arrest; his testimony, however, differed somewhat from that of Graham and Robertson in one particular, as he said the box had not been found at the time appellants were arrested, but that immediately after their arrest they, at the command of Robertson, went and got the box, around which they had been standing when arrested.

John Silk, a clerk of the railroad company at Louisville, Kentucky, testified to the shipment of thirteen cases of whiskey in car C. H. & D. 110104, consigned to Frank Hoffman, Little Rock, Arkansas.

Frank Hall, a watchman of the Railroad Company at Memphis, Tennessee, testified that he checked, upon its arrival at Memphis, car 59275, containing a shipment of whiskey, transferred to it from C. H. & D. 110104, which had been wrecked at Wingo, Kentucky. That the bill of the whiskey called for thirteen cases, but there was one case short; that one of the cases was muddy and the mud had dried on it, and that the shipment of the thirteen cases of whiskey was to Frank Hoffman, Little Rock, Arkansas.

We think the foregoing evidence furnished some proof of the guilt of each of the appellants, as it showed that they, or three persons of their appearance, were seen rolling away from the wreck a box which, when it was discovered and they were arrested, was found to contain a part of the whiskey that had been in the wrecked car, C. H. & D. 110104, consigned to Frank Hoffman, Little Rock, Arkansas; that there had been an attempt to conceal the box by covering it with corn stalks, and that appellants were at the time of their arrest standing at

and around it. Manifestly this evidence justified the court's refusal of the peremptory instruction asked by the appellants, and authorized the submission of the case to the jury.

It is true that the testimony of each of the appellants was to the effect that they did not take or conceal the box of whiskey, or know where the box was concealed, until one John Kelly, a negro section hand in the Railroad Company's employ, had followed tracks in the mud leading to where the box was concealed, and found it, whereupon he pointed it out to them and said: "Boys, here is a box in here; you let that whiskey alone; that's us railroad hands' whiskey."

Other witnesses, four colored persons, introduced in appelllants' behalf, testified that they were at the wreck, some of them claiming to have gotten there before appellants arrived, and they did not see appellants have or take away from the wreck a box or other property. Some of them admitted, however, that they heard the conductor of the train or Robertson order appellants and others off the railroad right of way before the loss of the box was discovered. Some of these witnesses also testified that the negro section hand, John Kelly, and a negro called Ire Jones were seen by them to come from the bushes at or near where the box of whiskey was afterwards found.

A number of witnesses were introduced in rebuttal by the Commonwealth, among them the Police Judge and Marshal of Wingo, who testified as to their acquaintance with the reputations of appellants in the community, and that the general reputation of each of them as to veracity and morality was bad; so notorious, indeed, that none of them could be believed on oath.

It must be admitted that the evidence was conflicting; and while some of that of the Commonwealth is, as argued by counsel for appellants, circumstantial, it is, on the whole, more satisfactory than that adduced by appellants and their witnesses, which, to say nothing of the discrediting of that furnished by the appellants themselves, was of a negative character; consisting, in the main, of statements as to what the witnesses did not see appellants do at the time of and following the wreck, rather than what they actually then did. At any rate, we are unwilling to say that the verdict is flagrantly against the evidence.

We find no error in the court's permitting the Commonwealth to prove by the admission of the appellant

Williams, on cross-examination, that he had been convicted of an offense that compelled him to be confined in the House of Reform. Such testimony was competent to discredit him as a witness, and the court carefully admonished the jury that it could be considered by them only for the purpose of affecting his credibility.

Instruction No. 1 complained of by appellants' counsel was not prejudicial to the appellants. This instruction properly told the jury that in order to find the appellants guilty, they must not only believe from the evidence beyond a reasonable doubt that they unlawfully and feloniously took and appropriated to their own use the case of whiskey, at the time in the possession of the common carrier, Illinois Central Railroad Company, for transportation to the consignee, but it erroneously advised them that they must also believe from the evidence beyond a reasonable doubt that such taking and appropriation of the whiskey must have been in pursuance of a previous conspiracy on the part of the appellants. This addition to the instruction was beneficial to the appellants, but prejudicial to the Commonwealth, as it required the jury to believe more than was necessary to a conviction under the indictment, and, therefore, made the conviction more difficult than the law required.

Appellants' further contention that there should have been an instruction as to petit larceny cannot be sustained. It is sufficient under the statute that the property feloniously taken from the common carrier and appropriated be of any value, the extent or amount of such value being wholly immaterial.

Appellants' final contention, that the court erred in refusing them a new trial on the ground of newly discovered evidence, is equally without merit. The alleged newly discovered evidence is as to the reputations of the appellants, which, it is claimed, would show them to be good. This ground did not authorize a new trial, as on the trial and when the evidence of the Commonwealth attacking their reputations was introduced, appellants did not claim to be taken by surprise, ask a continuance of the case, or intimate that they could, if given time, obtain evidence to rebut that of the Commonwealth.

No sufficient cause being presented by the record for disturbing the verdict, the judgment is affirmed.